IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 00-454 |
| vs. | : | |
| | : | CIVIL ACTION |
| NEIL MOSES | : | NO. 04-5414 |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                 JUNE 30, 2005

This defendant, Neil Moses, has filed a 72 page *pro se* motion under 28 U.S.C. § 2255 requesting relief from his conviction and sentence.

PROCEDURAL AND FACTUAL HISTORY[1]

Moses and co-defendant Jermaine Whitfield were indicted in August 2000. A superseding indictment was filed on October 4, charging Moses with two counts of distribution of crack cocaine, one count of possession with the intent to distribute crack cocaine, and one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. The charges stemmed from an undercover drug operation which utilized a government informant, Joseph Goff, and a Kell transmitter to tape record certain conversations that occurred during the controlled drug buys.

Goff, in the company of undercover Officer Brown, purchased crack cocaine from Moses on June 20 and July 7, 2000 outside of a residence at 2554 Sheridan Street, Philadelphia, where Dermont Cheeseboro, Moses' cousin, and Cheeseboro's girlfriend, Carmen Brown, lived. On July 13, Goff and Officer Brown arranged for the purchase of a quarter pound of crack from

---

[1] This is taken from the opinion filed by the Third Circuit Court of Appeals dismissing Moses direct appeal. See <u>U.S. v. Neil Moses</u>, 58 Fed. Appx. 549 2003 WL 220463 (3d Cir. (Pa.)).

Moses. While they waited with Moses outside the Sheridan residence, Whitfield arrived with the crack and entered the home. Once he was inside, Whitfield observed the police arrest Moses. Although Whitfield tried to hide the crack, it was discovered during a consensual search of the residence.

Attorney Gregory Pagano entered his appearance for Moses about a month after the filing of the indictment. At some point, Pagano also entered his appearance for Whitfield in an unrelated "state gun case." In light of these circumstances, the government moved on January 10, 2001, to disqualify Attorney Pagano as Moses' counsel, asserting that there was a "non-waivable conflict of interest." Whitfield, represented by an assistant federal public defender, pled guilty to counts three and four of the federal superseding indictment on January 19, 2001.

A hearing on the motion for disqualification was conducted on February 16 by the District Court. During that hearing, the prosecutor advised the Court that Whitfield had "entered into a proffer agreement with the Government and had also agreed to cooperate and testify against Mr. Moses." Thus, Whitfield was certain to be a witness if the case proceeded to trial. Pagano opposed the motion and pointed out that the state case against Whitfield had been adopted by the federal government and that he no longer represented Whitfield. He conceded, however, that he would be placed in the position of cross-examining his former client. When asked what his views were, Moses indicated that he still wanted Pagano to serve as his counsel.

The trial court advised Moses that the

> things [Pagano] learned while he was representing [Whitfield] he would still be required to keep in confidence under our ethical standards required of an attorney. And Mr. Pagano would have to cross-examine Mr. Whitfield if he appeared aggressively, because he would be a very important witness in the case, and anyone who was representing you would have to do something with [Whitfield] in front of

>the jury in order to reduce the effect of that witness' testimony.
>
>And in the process your attorney would have to try to do that without using information that he had gained in confidence while he was an attorney representing [Whitfield] in a prior matter.

The court further expressed its unwillingness to let Moses waive the conflict because it did not believe Pagano should be placed in such a predicament. Moreover, the District Judge did not want to face an ineffective assistance of counsel claim down the road. The court stressed that the certainty of Whitfield's testimony at trial made the conflict non-waivable. Because Attorney Rocco Cipparone represented Moses in another criminal proceeding before Judge Schiller, a proceeding that the government was going to seek to consolidate with this criminal case, Judge Kelly appointed Attorney Cipparone to represent Moses in the instant matter. He then continued the trial until May to afford Cipparone time to prepare Moses' defense.

During a pre-trial hearing on May 7, the Court addressed several outstanding motions, including the prosecution's motion to admit certain audiotapes. The hearing focused on the authenticity and accuracy of the tape recordings as a foundation for their admissibility under United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975). At one point, Moses himself objected to the accuracy of the tapes and the indictment. Near the end of the hearing, Moses requested another attorney, alleging that Cipparone had failed to communicate with him. Cipparone advised the Court that he had conferred with Moses at the jail the week before and had diligently prepared Moses' case for trial. The District Court denied Moses' request for new counsel and concluded that the tape recordings were authentic and accurate.

Jury selection was scheduled for the following morning. Before the panel was convened in the courtroom, Moses complained that he and Cipparone were "not on a working

3

level." He expressed his desire to "get another paid attorney[.]" The Court noted that, after Pagano's disqualification, Moses had signed an affidavit that he did not have the resources to pay an attorney. Moses responded to this by asking for counsel of his choice. The Court explained to Moses that he did not have the right to choose a particular lawyer when he was unable to afford retained counsel. Moses protested that he had never wanted Cipparone, but denied any desire to represent himself. When Moses indicated that his family was trying to obtain the money for a paid attorney and that he was waiting for them to arrive, the Court took a recess. However, when none of Moses' family appeared, the Court proceeded to jury selection. Although Moses claimed that he did not have any relationship with his counsel, Cipparone advised the Court that he had not had any angry words with Moses and that he was willing to continue to represent Moses at trial. The Court again denied Moses' request for another attorney and proceeded to jury selection.

After opening statements, Officer Brown, the undercover agent involved in the controlled buys, testified regarding the events that occurred on June 20, July 7, and July 13. Trial resumed on May 9 with Joseph Goff, the government's informant, testifying first. Before the jury was seated, Moses again moved "for the right . . . to have counsel of my own . . . Mr. Cipparone is not my attorney. I do not intend to represent myself and Mr. Cipparone is not my attorney." Moses explained that he "never sat down with Mr. Cipparone and went over anything about this case to prepare for trial." The Court denied Moses' motion.

Trial proceeded and the prosecution called not only its informant, Goff, but also Cheeseboro, Carmen Brown, a chemist, an expert in the field of drug trafficking, Whitfield and Agent Richter, who was the officer in charge of the surveillance operation. After the government rested, Cipparone moved for a directed verdict on counts three and four, which charged Moses

with criminal conspiracy and possession with the intent to distribute crack cocaine on July 13. The court denied the motion. The defense called Agent Richter to ask additional questions about the audiotapes, and then rested. The jury returned a verdict of guilty on all four counts on May 15, 2001. On October 1, the Court denied Moses' motion for a new trial and sentenced him to 240 months imprisonment.

## ISSUE ONE

Defendant's first contention is:

"PETITIONER'S PRO SE MOTION FOR A NEW TRIAL WAS TIMELY FILED UNDER THE PRINCIPLES ESTABLISHED BY THE UNITED STATES SUPREME COURT IN <u>HOUSTON v. LACK</u>, AND THE COURT SHOULD HAVE APPLIED THE PRINCIPLES OF EQUITABLE TOLLING UNDER THE PARTICULAR CIRCUMSTANCES OF PETITIONER'S CASE"

This issue was raised on direct appeal and denied by the Third Circuit. Further, even assuming that the Court was wrong in denying the post trial motions because they were not timely filed, the defendant suffered no harm. Every issue that he wanted to raise in post trial motions was raised on direct appeal where he was represented by counsel. For these reasons Issue No. One is denied.

## ISSUE TWO

"PETITIONER'S LAWYER PROVIDED INEFFECTIVE ASSISTANCE AT PRE-TRIAL, AND SENTENCING STAGE, WHEN HE FAILED TO ASCERTAIN THE DISTRICT COURT'S REASON FOR THE DENIAL OF PETITIONER'S PROSE MOTION FOR A NEW TRIAL AND FOR HIS FAILURE TO BRING TO THE ATTENTION OF THE COURT, PETITIONER'S CLAIM OF FILING SAID MOTION TIMELY. COUNSEL FURTHER WAS INEFFECTIVE FOR HIS FAILURE TO CORRECT THE APPELLATE COURT ON THIS GROUND, AND FOR NOT MOVING FOR RE-CONSIDERATION ON THIS GROUND."

This issue is closely related to Issue One. Basically it alleges that trial counsel was ineffective for not pursuing post trial motions. As we said under Issue One defendant suffered no harm by the failure of this Court to hear his post trial motions because the same issues were all considered on direct appeal. I could find no case where it was even alleged that counsel was ineffective for filing a direct appeal rather than post trial motions. "A claim of ineffective assistance of counsel requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAlesaleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). In this case defendant can show neither.

For these reasons Issue No. Two is denied.

### ISSUE THREE

"PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT UNDER THE UNITED STATES CONSTITUTION, TO RETAIN COUNSEL OF HIS CHOICE, AND WAS THEREBY PROVIDED WITH COUNSEL WHOM WAS INEFFECTIVE. ALL IN VIOLATION OF THE SIXTH AMENDMENT."

Defendant contends that he was denied counsel of his choice when Gregory Pagano was disqualified from representing him at trial. This issue was fully briefed and completely discussed by the Third Circuit Court of Appeals in its opinion dismissing defendant's direct appeal. See United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993); United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) holding that "[o]nce a legal argument has been litigated adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the District Court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255."

For this reason Issue No. Three is denied.

## ISSUE FOUR

"COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS THE TAPE RECORDING'S, THAT WERE SECURED IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION."

This issue was raised by appellate counsel and rejected by the Third Circuit.

United States v. Moses, 58 Fed. Apps. 549, 550 n.2, 2003 WL 220463 (3d Cir. 2003):

> Moses also submits that the District Court erred because it: (1) denied his pro se motions to suppress certain audiotapes and physical evidence . . . Nor was there error in denying Moses' pro se motions to suppress made after the introduction of the evidence. As the Court explained, the drugs seized from the home of his cousin, Dermont Cheeseboro, were appropriately introduced because they were seized during a consensual search. The audiotapes, made with the consent of either the government's informant or the undercover agent, complied with the requirements of 18 U.S.C. § 2511(2)(c).

The defendant's claim cannot be relitigated in this motion for relief pursuant to section 2255. United States v. Rewal, 10 F.3d at 105 n.4; see also, United States v. Orejuela, 639 F.2d at 1057 (issues raised and considered on direct appeal generally cannot be relitigated on a motion filed under section 2255).

For these reasons Issue No. Four is denied.

## ISSUE FIVE

"THE GOVERNMENT'S ATTORNEYS ENGAGED IN PROSECUTORIAL MISCONDUCT, BY FAILING TO DISCLOSE EVIDENCE MATERIAL AND FAVORABLE TO THE PETITIONER, IN VIOLATION OF THE ESTABLISHED PRINCIPLES, NOTED BY SUPREME COURT PRECEDENT, IN BRADY, GIGLIO, AND JENKS"

The defendant contends that the government withheld the reports of fingerprint

analysis, cash receipts for "buy money", the audiotape of the June 20th transaction, phone records regarding calls made to and from the defendant, surveillance logs, the statement of Dermont Cheeseboro, and an exhibit 8 that was mentioned in a DEA report.

The record indicates that no fingerprints were lifted from any evidence and therefore there were no reports of fingerprint analysis. (Supp. App. 487, 489-490).

The government did not turn over to the defense receipts for the "buy money" because no "buy money" was recovered from the defendant at the time of his arrest, therefore, receipts relating to the pre-recorded "buy money" were not material.

The record reveals that no audiotapes were made of the June 20th transaction, because the Kell transmitter malfunctioned (Supp. App. 59-60). There was, however, an audio component to the video recording that was made, and that was turned over to the defense. (Supp. App. 40-41, 63-64). This audio component of the videotape, however, merely recorded the conversations of the surveillance officers who were sitting in the surveillance vehicle and the police radio transmission broadcast in their vehicle while they were conducting the surveillance. (Supp. App. 40-41).

The defendant's assertion that the government failed to produce phone records to corroborate the consensual recordings is baseless. The recorded telephone conversation itself was turned over.

The defendant's claim as to exhibit 8 is baseless, as Officer Richter testified that such a report never existed and its mention in his report was a clerical error. (Supp. App. 489-493). The record reveals that the surveillance logs were turned over to the defendants and utilized by counsel during cross-examination of Officer Richter. (Supp. App. 488). As the government

states in its brief all evidence that was discoverable was given to defense counsel and counsel capitalized on the absence of other records by cross-examining the government's case agent, Officer Richter, about the lack of fingerprint evidence, phone records, "buy money" receipts, and the error in the DEA report that referred to exhibit 8.  There were no Brady violations in this case.

Any prior statements of Dermont Cheeseboro would have been reflected in the DEA 6 Report, which were turned over to the defense, as well as Cheeseboro's grand jury testimony, which was used by defense counsel in his cross-examination.

For these reasons defendant's Issue No. Five is denied.

### ISSUE SIX

"PROSECUTORIAL MISCONDUCT IN GRAND JURY PROCEEDINGS"

The defendant contends that the government committed prosecutorial misconduct before the grand jury by 1) eliciting what he characterizes as false testimony from task force Officer Corey Richter and 2) by improperly informing the grand jury of the defendant's two prior drug convictions.

The defendant's first contention arises out of the time of his arrest on July 13, 2000.  As agents were taking the defendant into the secured area of the DEA office of the Green Building, 20 packets of drugs fell to his feet.  The drugs were seized and this incident was noted on the DEA 6 Report prepared by the agent.  (Supp. App. 17-18).  When Officer Richter testified before the grand jury on August 9, 2000, he was asked, "was anything recovered off of Mr. Moses' person on his arrest?"  The officer responded "on his arrest he had 20 multi-color small plastic packets full of crack cocaine that was found on him".  (Supp. App. 540-541).

The defendant now contends that the government committed prosecutorial

misconduct because the drugs were found at his feet, not on his person. In his motion the defendant denies dropping the drugs that were found at his feet. In its brief, the government contends that it was prepared to establish at trial that the defendant did in fact drop the drugs, but the defendant's trial counsel, Mr. Cipparone, successfully opposed the government's motion to admit this evidence under Federal Rule of Evidence 404(b). The defendant was not indicted for those twenty packets but it is defendant's position that this testimony influenced the grand jury in its decision to indict.

      As the government points out, the trial jury did not hear the evidence that cocaine powder was found at defendant's feet in the Green Building, and nevertheless found the defendant guilty beyond a reasonable doubt. The grand jury needed only to find probable cause that the defendant committed the charged offenses. See U.S. v. Mechanik, 475 U.S. 66, 70; 106 S.Ct., 941-942 (1986) ("[T}he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.") Furthermore, what the Supreme Court said in the case of Costello v. United States, 350 U.S. 359; 76 S.Ct. 406 (1956):

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the

charge on the merits. The Fifth Amendment requires nothing more.

Defendant also claims that the government unduly prejudiced the grand jury by introduction of his two prior drug convictions. This evidence was introduced in order that the grand jury could determine a notice of additional factors in the indictment, in compliance with then current practice. The grand jury did return an indictment with such notice.

Neither of defendant's claims of prosecutorial misconduct has any merit and therefore his claim that trial counsel was ineffective for failing to raise these issues pretrial is baseless. Counsel cannot be deemed ineffective for failing to raise a meritless claim. It is defendant's burden to establish his claim of ineffective assistance of counsel. Government of Virgin Islands. v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984).

The defendant must satisfy a two pronged test before his conviction will be overturned on ineffective counsel grounds.

> To succeed on a claim of ineffective assistance of counsel, a defendant must show both that i) the performance of counsel fell below an objective standard of reasonableness and ii) the errors of counsel prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong a defendant must establish . . . that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). "This requires showing that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." (Id.). Strickland v. Washington 466 U.S. 668, 687 (1984).

Defendant has failed to satisfy either prong of the Strickland test. For these reasons Issue No. Six is denied.

## ISSUE SEVEN

"INEFFECTIVE ASSISTANCE OF COUNSEL AT THE PRETRIAL STAGE OF THE PROCEEDINGS"

11

Under this heading defendant contends that pretrial counsel, Gregory J. Pagano, Esquire, was ineffective for failing to file a motion to suppress audio tape recordings of the drug transactions on July 7 and July 13, 2001.[2]  The defendant raised this issue pro se at trial, and appellate counsel raised it on direct appeal by claiming that this Court erred in denying the defendant's pro se motion to suppress.  The Third Circuit rejected the claim.  The Court held:

> Nor was there error in denying Moses' pro se motions to suppress made after the introduction of the evidence.  As the Court explained, the drugs seized from the home of his cousin, Dermont Cheeseboro, were appropriately introduced because they were seized during a consensual search.  The audiotapes, made with the consent of either the government's informant or the undercover agent, complied with the requirements of 18 U.S.C. § 2511(2)(c).

U.S. v. Moses, 58 Fed.Appx. at 550 n.2.

Since the Third Circuit found these issues substantively baseless, the defendant has failed to establish that counsel was ineffective for not raising them pre-trial.  Government of Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984); Strickland v. Washington, 466 U.S. 668, 687 (1984).

Under this heading the defendant also claims that pretrial counsel was ineffective for failing to file a motion to suppress a video surveillance tape that was made on June 20, 2000, a date on which the defendant sold 25.8 grams of crack cocaine to the cooperating informant.  The defendant contends that the surveillance tape failed to capture him and the cooperating witness together on the tape, and claims that United States v. Lee, 359 F.3d 194, 203 (3d Cir. 2004) holds that a videotape is not admissible unless the cooperating individual is present on the tape.  Lee did

---

[2]The defendant also challenges the effectiveness of Rocco Cipparone on this basis in Issue Four.

not involve a cooperating witness wearing a recording device, as occurred in the present case. In Lee, agents installed monitoring equipment in Lee's hotel room. The Court rejected Lee's challenge to the resulting surveillance tapes but noted that had the conversations been recorded while the cooperating individual was absent from the suspect's room, they would not have been admissible. Here, the surveillance tape captures the defendant's movements on a public street and the videotape did not record any of the defendant's conversations. (Supp. App. 40-41, 63-64). Lee does not apply to the present case and the defendant has failed to establish that counsel was ineffective for failing to raise this issue pretrial.

For these reasons Issue No. Seven is denied.

## ISSUE EIGHT

"ATTORNEY ROCCO CIPPARONE PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AT ALL STAGES OF PETITIONER'S CASE"

Under this heading the defendant lists in separate paragraphs 19 allegations of ineffective assistance of counsel. He claims that "there never existed an attorney client relationship," (p. 67 ¶ 1) that "he did not trust and could not communicate with his appointed counsel" (p. 67 ¶ 2) that "they only met once prior to trial" (p. 67 ¶ 3) that "counsel failed to obtain all discovery" (p. 67 ¶ 4) and "failed to file pretrial motions"(p. 67 ¶ 5). On direct appeal the Third Circuit reviewed counsel's conduct in the context of defendant's claim that he was denied counsel of his choice. In this regard the Third Circuit noted:

> Here, the denial of Defendant's request for counsel of his own choosing did not offend his Sixth Amendment rights. The record shows that the Court inquired into the reasons for Moses' request and learned that he wanted to select his own counsel, despite his indigent status, because he felt that Cipparone had failed to communicate with him about the

> preparation of his defense and because he thought his family might have obtained the funds necessary to retain new counsel. The record shows, at a minimum, that Cipparone filed two pretrial motions on Moses' behalf and conferred with Moses the week before trial. While Moses' dissatisfaction with Cipparone's appointment was evident, Cipparone's willingness to continue to represent Moses undermined any assertion that there was an irreconcilable breakdown in communication. Indeed, the record indicates that Moses and Cipparone communicated at various points during the trial.

United States v. Moses, 58 Fed. Appx. at 556.

The record clearly shows that the dispute between defendant and appointed counsel was created by defendant's refusal to cooperate with counsel and his refusal to accept the Court's ruling that his original attorney had an unwaivable conflict of interest. The defendant ordered prior counsel not to turn over discovery material to appointed counsel and ordered appointed counsel to subpoena prior counsel to testify at trial but refused to tell him the proposed subject of the testimony. Defendant would not speak to his appointed counsel, but nevertheless insisted that he did not want to represent himself. (See Supp. App. 27-28, 75-76, 481-484). Because of this conduct the defendant is not entitled to the relief requested.

Despite this treatment from the defendant, Mr. Cipparone rendered effective representation. He filed a pretrial motion to dismiss the indictment, a written motion in opposition to the government's 404(b) motion, which he successfully opposed, and litigated other pretrial motions filed by prior counsel.

The defendant also claims that Mr. Cipparone failed to pursue pretrial motions, including motions for a speedy trial, suppression, a motion to compel and a motion to preserve rough notes. (See p. 67 ¶ 5). The Third Circuit rejected the defendant's suppression claims, and previous counsel did file a motion to compel. (Supp. App. 505, docket entry no. 29). The

defendant did receive the rough notes of the chemist. (Supp. App. 166, 476-480). The defendant fails to state what other rough notes exist, but claims that counsel was ineffective for not filing a motion to preserve them. The defendant does not allege that any notes were improperly destroyed and would have been preserved but for counsel's dereliction. He has failed to meet his burden as to the claims set forth in paragraph 5.

The defendant alleges that counsel failed to call available witnesses who "would have impeached the testimony of the government's lay witnesses." (Defendant's motion at 67 ¶ 6). Defendant fails to identify any of these witnesses, or indicate how their testimony would have helped the defense. Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991). See also Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir. 1987) (petitioner's vague and general allegations failed to make sufficient showing to justify relief).

The defendant alleges that trial counsel "failed to adequately counter, and allow [him] to participate in the jury selection process." (Defendant's motion at 67 ¶ 7). However, the record is clear that at the time of jury selection, the defendant was refusing to cooperate with counsel:

> THE COURT: All right. Mr. Garrity, are we ready for the jury panel"
>
> MR. CIPPARONE: I am Your Honor.
>
> MR. ASKIN: I believe we are Your Honor.
>
> THE COURT: Mr. Garrity, have you heard whether or not a panel is ready"
>
> MR. GARRITY: No, Your Honor.
>
> THE COURT: Okay, You'll go down and get one . . .
>
> THE DEFENDANT: Your Honor, me and Mr. Cipparone, I done said some hasty

things to Mr. Cipparone, we does not have a client - attorney relationship at all. There's no relationship at all, so by us going to trial now it's just going to prejudice me because me and him  - he is not - me and him done had some angry words towards each other. There's no relationship here -

THE COURT: We're going to go to trial now, and either he's going to represent you, or your going to represent yourself if you so choose . . .

MR. CIPPARONE: Your Honor, if I could just comment on something that Mr. Moses said.

I want to be clear, I have not had any angry words towards him. I have always tried to communicate with him. He has been dissatisfied with me for whatever his own perception is, but I want the Court to understand that I have at all times given Mr. Moses an opportunity to speak with me to discuss anything about his case, and I have told him I will represent him to the best of my ability.

He doesn't like that ability in his perception, but I do want the record to be clear that I don't have any animosity towards him. I'm willing and perfectly competent to represent him and I've been doing that . . . .

(Judge exits while jury panel enters.)

(Jury panel in, 10:56 a.m.)

(Jury panel, Duly Sworn 2:00 p.am. [sic])

(Supp. App. 161, 168-170).

This exchange indicates that Mr. Cipparone was very patiently trying to assist the defendant, despite all of the defendant's attempts to alienate counsel. If the defendant did not

fully participate in jury selection, it was because he chose not to do so. He is not entitled to relief based on his own failure to cooperate in his defense.

Defendant also contends that counsel was ineffective for failing to request a mistrial when Joseph Goff, who wore a recording device when purchasing drugs from the defendant, testified that he believed that disputed word in the transcript was the defendant's name "Neal". The defendant claims that there was a stipulation that the disputed word was "deal". (Defendant's motion p. 67 ¶ 8). At the Starks hearing, this Court ruled that the barely intelligible word sounded more like "deal" than "Neil". In the transcript that was shown to the jury, the word was changed to "deal". The Court also ruled that the parties were free to argue their own interpretation of the word (Supp. App. 98-99). Joseph Goff was the individual who uttered the recorded comment on tape, and when he was called to testify at trial, he stated that he believed that he said "Neal". (Supp. App. p. 430-431). His testimony in this regard did not violate the Court's ruling, and the defendant's allegation of ineffectiveness for not moving for a mistrial is baseless.

The defendant next complains that counsel was ineffective for failing to object to what the defendant claims were leading questions posed by the prosecutor to Mr. Goff. (Defendant's motion at 68 ¶ 9). Defendant fails to indicate which questions he believes were leading. This vague allegation fails to provide a sufficient showing to justify relief. Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir. 1987).

In paragraphs 10, 11 and 12 of his motion at page 68 the defendant alleges ineffective assistance of counsel for failing to challenge the audiotapes and the search of his cousin's house. These issues were decided adversely to the defendant by the Third Circuit in

reviewing the defendant's direct appeal. United States v. Moses, 58 Fed. Appx. at 550 n. 2. The defendant's claim that his attorney conceded the accuracy of the audiotapes is incorrect. The challenge as to the accuracy of the audiotapes was rejected by this Court after a Starks hearing.

The defendant's claim that counsel was ineffective for failing to "require that all sidebar conferences during the trial be on the record", is baseless. (Defendant's motion at 68 ¶ 13). All conferences were on the record. In defendant's motion at page 68 paragraph 14 he claims that counsel was ineffective for failing to object on Rule 404(b) grounds to the defendant's possession of 20 bags of cocaine at the time of his arrest is mistaken. Counsel did oppose the introduction of this evidence, and the Court excluded it. (Supp. App. 23). The defendant complains that appointed counsel failed to adequately pursue the misconduct of Joseph Goff both before and after the entry of his guilty plea. (Defendant's motion p. 68 ¶15). Because the defendant fails to specify exactly what he is referring to this allegation is denied as meritless.

Defendant also alleges that counsel failed to utilize the results of fingerprint analysis to attack the credibility of the government's witnesses. (Defendant's motion p. 68 ¶ 16). Denied, no fingerprints were lifted from any of the drugs that were obtained. (Supp. App. 489-493).

Defendant contends that appointed counsel was ineffective for failing to pursue the "phantom" exhibit 8. As was explained at trial there was no exhibit 8. (Supp. App. 489-493).

The defendant next contends that appointed counsel failed to utilize the audiotapes to undermine the credibility of the government's witnesses. The defendant fails to indicate just how these tapes could possibly have been used for this purpose. The tapes were played for the jury to corroborate the government's witnesses' testimony. This allegation contained in

defendant's motion pages 68-69 paragraph 18 is without merit.

The defendant also alleges that counsel was ineffective for failing to request a limiting instruction on the defendant's prior felony convictions for selling drugs. Evidence of the defendant's prior conviction was not presented to the jury in the guilt phase of the trial. The jury considered this evidence during a bifurcated hearing after they found him guilty of the charged crimes. The defendant fails to allege what type of limiting instruction would have been appropriate during that phase of the proceedings. This allegation is denied.

Lastly, the defendant requests that the Court allow him to preserve any "Blakely", "Booker" and "Fan Fan" issues that he may have. The jury found beyond a reasonable doubt that the defendant had a prior felony conviction for selling drugs, and none of those cases affords him any relief. That request is denied.

We therefore enter the following Order.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 00-454 |
| vs. | : | |
| | : | CIVIL ACTION |
| NEIL MOSES | : | NO. 04-5414 |

**O R D E R**

**AND NOW,** this 30th day of June, 2005, upon consideration of the defendant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, and the government's opposition thereto, it is hereby **ORDERED** that the motion is **DENIED**.

The Court finds that the defendant has not made a substantial showing of the denial of a constitutional right. It is therefore further **ORDERED** that a certificate of appealability is **DENIED**.

BY THE COURT:


/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE